Good morning, Your Honor. Good morning, Counsel. Allow me to introduce myself. My name is Scott Hubbard. With me at the table is Child Counsel co-appellant and my father, Lynn Hubbard III. I represent the appellants. I just have a brief statement to make, and then if the panel doesn't have any questions for either me or him, I will reserve the rest of our time. And my statement is we've litigated tens of thousands of ADA lawsuits over thousands of facilities, all of them with surveillance cameras. We've done this for 20 years. I promise you that if we were the incompetent and unethical monster that the defense portrays us to be, someone would have said something sooner. Counsel, is there anything in the court's findings that are inaccurate? Yes. Actually, allow me to pull this up. iPads. One of them off the top of my head is that the court stated that we didn't provide a reason for our amending the deposition testimony. Not only is that incorrect, it was Tulaphorn who put it in front of the court. It was a letter that we sent to counsel. As soon as the error was brought to our attention, we explained to him this is what happened. I guess you're, from my perspective, cherry-picking a point that is of not great moment. But the reality is that was it you and your girlfriend that went to the place, took the picture? No, it was my father conducting the Rule 11 site inspection. Okay. But that was where the picture was taken, not Mr. Vogel, right? If you're talking about the receipt and the photographs, yes. Just focus on those two pieces. And he testified that he didn't do it. He wasn't there that day. And you all said that he was. No. It couldn't possibly both be true. No. Actually, that's not true. Here's what happened. Under our system, when our client has a case, they send us a copy of the receipt, any pictures they took, and any measurements they took. We need the receipt to determine the date of actual visit and to prove to ourselves that this isn't a drive-by lawsuit, that our client showed up. He visited the facility. He took pictures. He bought something. He was actually there. He encountered the barriers that he claims to have encountered. And he wants to proceed with a lawsuit. Now, once we get that information, we send out an attorney with a smart level and a camera to visit the facility himself to determine whether or not architectural barriers are there. We've been doing this for decades. Has the State Bar taken any action in connection with the attorneys in this matter? With respect to the attorney responsible for the discovery-related abuses, as I indicated in our report. What happened? While it happened, all of this. No, I mean, what did the State Bar do? Oh, the State Bar dismissed it in the interest of justice, their words. Dismissed all charges against him. Any of the other attorneys? That was the only attorney. The only one. Yes. And so, once the- That may all be well and good, what you just said. But he shows up at the deposit, your client, the client shows up at the deposition, the one he's questioned about all of this. He just says, yeah, those are my pictures. And, yeah, I was there. That was my receipt. And I bought the Coke, the giant Coke that you get at McDonald's. And if you look- And he said that. I mean, he just- He did. But if you look at- He looked at the pictures. Oh, yeah, those are the pictures I took. If you look at the deposition transcript, the opposing counsel prefaces it. These are photos, your photos, that your attorney provided to us. And he said, those are my photos. He said, yes. He did. He didn't recognize the error either. And let's be honest, this was a mistake. But this is the only documented mistake in 20 years. We haven't- We're dealing with this case. No, in 20 years. No, we're dealing with this- Oh, forgive me. We're dealing with what happened in this case. Because, well, the judge in his order makes reference to some other case down in San Diego. Oliver, yes. But it looks like he had the facts a little wrong there. But the California Supreme Court and the state bar both look at a lawyer's prior conduct and his- But that's not when determining professional- But that's not- That's not- The district court judge imposed terminating sanctions here under the court's inherent authority because he found that basically your client lied. Yes, that's true. On a material fact that was important to the case. I have to- That's why the- All those statements are true. That's why the district court dismissed the case. And here's the problem with that. The fact that we allegedly lied about was a lack of standing. And as we indicated in our opening brief, even if everything the defense said was true, even if Attorney Lynn Hubbard went there, you have to lie about a material fact. And we accepted full- But you can't lie about immaterial facts. You can do that too, but that's not perjury. And the judge accused us of perjury. You know from our case law in this whole area, and I don't know if your firm was involved in our standing cases. All three of them, yes. Under the ADA, you know well and good that in these cases, standing can become a major issue. It can be. Well, and you need to- And you know when you litigate these cases, when you file them, that you've got to craft the complaint and you need to be prepared to deal with the standing issue if it's raised by the other side. And we did. And if you don't, you're going to suffer the consequences. And here, that's why that fact is really material, because you want to be able to show that before that complaint was filed, the plaintiff was out at the facility and encountered the barriers. And that's where you're wrong. Why am I wrong? What's wrong with that? That's what our case law says. Because, no, actually, Your Honor, it doesn't. We were attorney of record in Doran v. 7-11. We were attorney of record in Chapman v. Pier 1. And I can say, based on my firsthand knowledge on all of those, that a disabled person does not have to encounter a barrier in order to have standing to remove it. Actual knowledge of the barrier alone is sufficient. And that's the main problem. You just restructured all of it. No, no, actual knowledge. It is true that once they've encountered a barrier, once they've encountered it, if there are other barriers that they didn't actually encounter, they can raise those. No. Judge Gould was explicit on this. The in-bank opinion was explicit on this. It's actual knowledge. If someone goes into a restaurant and says, you can't get into the bathroom, it's too narrow. That disabled person does not have to go into that bathroom and encounter that barrier himself to have standing to remove architectural barriers. I included a footnote. Let me ask you this. Don't they at least have to have visited the location or the facility prior to filing their complaint? No. The Ninth Circuit has said that also, Your Honor. So they can just file a complaint knowing somebody's told them that the McDonald's down the block here, the slope is too steep. Let me give you a real-world example. But yes, to answer your question before, Kaczynski always complains lawyers do that, answer the question first and give an explanation. Yes. And let me explain to you why. Let's assume that I'm, Judge Kaczynski, forgive me, I did not mean to be disrespectful. Let's assume that I'm looking, I'm in a wheelchair and I'm looking to stay in Arizona. And I call up a hotel and I said, do you have any ADA-accessible rooms? They say, no, we don't have any. Haven't been there, haven't encountered the room, have actual knowledge that there are barriers present that I can't use that facility. I don't have to go to Arizona, present myself to the hotel, demand to see all the rooms they have standing. And this is what the Department of Justice said. And we included this passage in our opening brief. They don't want disabled individuals to suffer dangerous and hazardous conditions. Did you allege in the complaint that he had been told? We alleged in our complaint that he had. That he had been told that this particular McDonald's had barriers. We alleged in our complaint that he had actual knowledge of the barriers present, which would be sufficient under Dorn and Chapman. And I can pull up that citation during the break and get the exact language for it. So in your view, this is just nothing more than an immaterial fact. Standing is never an immaterial fact. But accusing us of lying about an immaterial fact to manufacture standing in a case where it already existed and would exist under even the accuser's set of facts, it's immaterial regardless how you look at it. And I have five minutes and 40 seconds, so unless the panel has any other questions, I'll reserve the rest of my time. Thank you, Kenneth. Before I go, however, does the Court have any questions for my father, who's also here? Fair enough. Good morning, Your Honors. Excuse me. May it please the Court. Brendan Brownfield representing the appellee Tuliporn, Inc. Now, I think the important point to mention here in this proceeding today, and the Court has already touched upon this, is that this is really about one case. This is not about hundreds or thousands of other lawsuits that the appellants have filed over the years. This is about a fraud that occurred in one case. Well, people do make mistakes. Understood, Your Honor. But based on the evidence that we presented to the District Court, this was not a mistake, and the District Court was well within its discretion to conclude that the justification offered by appellants was not persuasive. And if I may, I would like to emphasize that, again, this, in evaluating a motion for terminating sanctions and for attorney's fees pursuant to the Court's inherent powers, this is reviewable on an abuse of discretion standard. From your perspective, let's assume, arguendo, that your opponent is correct, that they had standing based upon what was alleged. But there were lies by the attorney and there were lies by the plaintiff. Are the lies themselves enough to permit the Court to do what it did in this case? As I understand the Court's question, yes, because, again, what we're talking about here is a lie about the facts. Standing is a legal concept. And as much as the appellants would like to turn this into an argument about what is standing under the ADA, that was not before the District Court. And so what the District Court decided in this case, and I think this will answer Your Honor's question, is that the appellants lied about the fact that Vogel had been to the restaurant and encountered barriers that day. Now, those are the facts. Those are the facts that appellants would use to establish standing at trial. But those facts... But that was important to the District Court. It absolutely was. Because it talks about standing. Well, but, again, the standing issue is, the importance of standing to the case is that it interferes with the rightful decision of the case. It's something where if there are factual misrepresentations about an issue that's that important, that the case could be decided wrongfully. And that's not the purpose of litigation. Litigation is a truth-seeking process. Let me ask you something. You, fairly early in this controversy, you offered to settle the case if they would dismiss it  I don't believe that's correct, Your Honor. As I recall, there was never a demand that was made to us. No, no, not a demand to you. I said I thought that you offered to them that if they would dismiss the case, that would end it. You'd want your attorney's fees up until then, and then you'd let them dismiss the case. And that would have been the end of this controversy. Somewhat, Your Honor. What we did when we disclosed the existence of the video, and as part of the meet-and-confer process for the motion for terminating sanctions, we laid out the basis for that motion, and we requested that the appellants dismiss the case and pay our fees. And you're right, Your Honor, that had appellants agreed to do those factors, this case would not have gone as far as it did. We would not be standing here today. Well, that's what puzzles me about this, and this may not be a legal problem. But, you know, if they had really done what you said, and they got caught at it, and all they had to do was dismiss the case instead of risking their entire careers, don't you think that they would have just dismissed this case? As I said, they've got thousands of these cases. They didn't really need this case. And if they were caught and were deliberately lying and manufacturing a case, why would they fight this this way at the expense of their careers? Well, Your Honor, I... As I said, this may not have anything to do with the answer to the question, but as I read the case, I thought to myself, you know, if you were really committing fraud and you were really going to face disbarment, and you had a very successful practice, why would you fight this all the way through the courts, the state courts, the federal courts? Why wouldn't you just dismiss the case? Well, to be fair, Your Honor, I personally would have to speculate as to the true motives behind that, the answer to that question. But what I can say is that based on the evidence that was in front of the district court, the evidence would indicate that, again, this was a circumstance where, and as counsel has stated, the law firm is a very frequent filer of access lawsuits and does have a reputation to protect. And so, you know, again, it would be speculation on my part. But they made a mistake. Just what they say now. I mean, they could have said, you know, we always have these pictures. We thought these were from the client. I mean, they wouldn't have been exposed as a fraudulent firm in general. They could have. Judge Pius said, you know, you can't make a mistake. They could certainly have said, well, we made a mistake. If this were part of a scheme, why, you know. I understand where Your Honor is going with that, and I think what is important to keep in mind here is that there was never any evidence presented, not just to the district court, but to us, to the defendants, that what occurred here, that really anybody was willing to stand up and defend that conduct, which, you know, our evidence on this point was very compelling. Well, they did offer an explanation which provided the factual basis for their mistake. That's correct. It was an explanation that potentially could explain the facts. But you need more than that. And especially in circumstances like this where we have video that is indisputable, that there needs to be some explanation for why this occurred. There's no doubt. I mean, nobody's challenging the fact that the counsel was there on that day. He was the one who got the receipt. He was the one who had the Coke. And they say that's what was in our file. That was the Rule 11 inquiry. And somehow that got there and the original got misplaced. Well, and there's two points to that. First, if that is true, if this was truly an honest mistake, then one would expect that evidence, a truthful declaration under penalty of perjury, could be provided from Vogel himself at a minimum. And, again, the rules of civil procedure even require Vogel to state, and counsel has argued that his letter sufficed prior to the errata sheet being signed, that that letter explained why Vogel misrepresented those incredible number of statements in his deposition testimony. Rule 30E requires the deponent to sign a statement under penalty of perjury testifying to why he made those changes. And without something like that, and the district court was very clear on this point, the district court is entitled to conclude that the rewrites that were of such a substantial character were really purposefully intended to cover up misconduct. And so that's the problem I have with this. Is it not fair to say, particularly in light of a case I'm familiar with called Hager v. Goodyear, that sometimes people who lie, who make misrepresentations, just keep pushing, thinking they're going to get away with it? And arguably, that's what the court thought had happened here. I think that interpretation could be drawn from the facts of this case as well, Your Honor. I do. And as I mentioned before, in terms of this court's role in reviewing the case and in determining where we go from here, the grounds on which the district court's discretion can be overturned would be an error of law or a clearly erroneous assessment of the evidence. We've talked about the evidence a little bit, and I did want to at least emphasize to the court that in terms of the law here, and we've talked a little bit about standing, but the law here was the law on terminating sanctions. We did not file a motion for summary judgment, for example, on the ground that plaintiff lacked standing to bring this lawsuit. All we offered to the district court was that appellants acted in bad faith in this case. And on that ground, the district court applied, or excuse me, under that theory, the district court applied the applicable law. There's the five-factor test in the case called Halico Engineering. There are Ninth Circuit cases that discuss the imposition of sanctions for fraudulently offering evidence that one knows to be false. And appellants have not disputed that any of those authorities are applicable or that there are any authorities the district court should have considered with respect to terminating sanctions that were not considered. So really, there is no error of law that was committed here by the district court in evaluating the motion for sanctions. Now, as the court mentioned earlier today, the issue of standing does come up, but only to the extent that standing is a very material issue to this case. It's a dispositive issue. Do you agree that they would have had standing simply on the basis of the lawyer going, taking the pictures, telling the client, this is what it is, it's inaccessible, and you couldn't, you know, it's a violation, and so don't bother to go? Would that give the client standing? I don't agree with that, Your Honor, although we did not make this point to the district court because, again, that was not the subject of our motion on our appellate brief because the appellants raised that issue of standing. It's clear from the cases, the seminal cases from this court on standing, that the plaintiff has to visit. In fact, the plaintiff in each of the four cases that appellants cited did actually personally encounter some form of a barrier. Now, whether, as counsel explained, there is a circumstance where a person calls an accommodation and asks for an accessible room and is told there is no accessible room, I would not argue that that's actual knowledge so much as another manner in which you could personally encounter a barrier. That's not the lawyer calling ahead or visiting an accommodation and then relaying to his client, oh, guess what? There's a McDonald's restaurant that's out of compliance. Let's put your name on a lawsuit and we'll go from there. And, again, that's a conclusion that can be drawn from this evidence here, and there's nothing in the record before the district court that would explain in any competent fashion why this was truly an honest mistake. It was not, and the district court was well within its discretion to conclude that. Thank you. If I may, Your Honor, just one final point. I think there's, again, in that the courts are a tool for effecting justice, and like I mentioned, this is not a case about what happened in prior cases or anything like that, but this is not a – there's nothing to prevent this same type of misconduct from happening again. And to reverse the district court on this point would provide bad faith litigants with impunity to flood the courts with these same types of false accusations. And so, as I argued previously – False accusation is not necessarily what happens here. The accusation, basically, is that the McDonald's is violating the law, and that may or may not be a false accusation. We have no reason to believe it is. Well, the accusation that's false – and, actually, I could point the court to the language of the complaint – is really that the plaintiff actually personally went to the restaurant. It's not about the discrimination. Well, that's not a false accusation. The problem with the law in this area is that there's no way to enforce this law except going around to 800 McDonald's or whatever they are. Let's assume the McDonald's is constructed in a manner that makes it inaccessible. In order to sue there, you have to find people to go to each one of those places and file a separate suit. It's not the most – the law isn't the easiest one to really enforce and to obtain justice, if that's what you're talking about. Well, Your Honor – The only way – a client has to go to each one of those places to prove that each one is inaccessible. And whether that's justice, that's the only way to correct inaccessible places. But that's not what we're really looking at in this case. That's true, Your Honor, and I think the counterpoint to that, again, is that when a plaintiff does not personally visit a restaurant and is told by somebody else that it is inaccessible, then the plaintiff is not ordinarily encountering those barriers. The plaintiff may not go there and may not even know about it, but for his attorney's visit and understanding that it might be inaccessible. Now, what if the defendant, in its own course of business and its own good-faith efforts to comply with the ADA, fixes those issues anyway and is in the process of fixing those conditions that might result in some dispute over their accessibility? It really forces claims into the court system that really shouldn't be there. And that's the only point I wanted to make there, Your Honor. I think – and I'm running out of time here, but the last point I would make here, too, is that, again, we've demonstrated to the district court really beyond a shadow of a doubt what occurred here, and appellants offered nothing in response. And so the district court was entitled to conclude, as it did, that appellants acted in bad faith, and that bad faith started in January of 2013 and concludes to this very day in the form of this frivolous appeal. And so we would ask, Your Honors, that the court award the maximum sanction against the appellants for bringing this frivolous appeal, including Tulip Warren's attorney's fees and costs. And on that point, unless the court has anything further, I would submit. Thank you. Before I start, I told you I would cite to the complaint, and I will. That is ER 312 – or, excuse me, ER 316. That includes our actual knowledge allegations. Counsel, you know, the most troubling part of this case is not the possible fusion of the pictures and the receipt and, you know, whether that was a Rule 11 inquiry or whether that was something else. What do you say about the deposition and all the things that the client said in the deposition that he then retracted? The aspects of the deposition that no one disputes that he visited the facility before – visited the property before filing the complaint. He had actual knowledge of the barriers. Their intimate knowledge of the details of the layout of the restaurant. The problem is those photos in the receipt where they say, are these your pictures? Yes, they are. They were pictures of the restaurant. Where is the evidence that he actually visited before the filing of the complaint? There's two pieces of evidence. First is the fact that we went out there and did a Rule 11 site inspection. Now, I know opposing counsel is really big on calling us liars and frauds and forgers, but sometimes a mistake is just a mistake. And we went to evidence. When we were doing our response to Judge Gutierrez, we laid out our process, and the evidence was we said, listen, he has intimate knowledge of the facility, he knows where all the barriers were, and we would not have gone out there but for him contacting us, giving us a receipt, and telling us he visited. Is there any kind of a declaration from the client that he actually went there before the complaint? In addition to the deposition changes, we, in open court, and if you read the trial transcript, we offered to bring our client into court to testify in front of Judge Gutierrez and answer any questions that he might have, establishing that he visited the facility prior to bringing the lawsuit and giving Judge Gutierrez to make sure Judge Gutierrez is 100% confident in our standing and that our guy is telling the truth. Why didn't he just submit a declaration? At that point. Under penalty of perjury. At this stage of litigation, it wasn't. We thought that deposition transcripts under the penalty of perjury were just as good. It didn't come up. When we were in oral argument, we offered to produce him. Judge Gutierrez said it wasn't necessary. He was fine with it. He said in his transcript. Was that in the record that you offered to bring the client in to testify that he had been there and Judge Gutierrez said it wasn't necessary? Yes, it was.  I cited to that. Forgive me, Your Honor. Look at page 23 of the reply brief. I would recommend that if the court wants to go down this road, call him in. Sit him down. Okay, he's already seated. Wheel him up and ask him the questions of why did you change your deposition testimony? Well, his explanation would hopefully be the same. I hope they would, too, Your Honor. And basically he said in his order that it wasn't necessary because Vogel wouldn't provide any additional information. And a couple other points I want to hit. The reason that we file so many of these lawsuits is because there's only two firms doing it. And the reason that we're fighting this so hard is we're a firm with honor and integrity. No judge has ever, no district judge has ever accused us, much less found us to have manufactured evidence, and much less constitutional standing. And the reason we don't try, and no one in their right mind would try, is because there are video cameras everywhere. You can't fake a visit. Hold on. There were a number of changes to the deposition were quite substantial. They were. Which one of these changes indicates or makes it clear that he visited the restaurant prior to January 6th? Your Honor, I have one minute left. I mean, you know this better than I do. I do, and I don't have a minute to flip through the record. Allow me to do a 26-F letter and I will identify the changes. Well, I can look at it myself. But you said that there are, if I, on my iPad I have them all up here. If I look at, if I read each one very carefully, it will indicate there that before January 6th he visited the restaurant. We edited the record to eliminate the date of the Rule 11 site. January 8th. January 8th as the date of his inspection, or excuse me, as the date of his visit, clarifying that that's the Rule 11 site inspection. And we eliminated the references that that was his receipt and that photo's. And I believe because Cush was incredibly thorough on this, he also changed that he visited the date sometime before that. But I do have to double check my records. But he, you know, when you read it, he says, for example, he says, I do not recall visiting McDonald's on January 8th. Never. I'm going to take a very hard look at this, but I. Well, we're going to take a hard look at it. They provided a DVD showing everybody being there. Look at that DVD. In the very beginning, you'll see me walking away in the car. Our client had two complaints that day. Fungus parking lot. I had to walk and look at. I looked at that parking lot, and we did not sue that parking lot. Four minutes, you'll see me sitting there talking to my client on the telephone telling him I didn't think there were enough barriers to warrant a lawsuit against that parking lot. And that's their evidence. Thank you, Jeff. I guess on that note, Your Honor, unless you have any more questions for me, I can't top that. I want to understand. When did the district court tell you it was not necessary? When did you say that the district court will bring in our client and he said it was not necessary? ER-29 and ER-30. And I would also instruct the court to look at ER-49, which reads, on November 4, 2013, the court held a hearing to discuss the merits of defendant's motion. At the hearing, counsel requested an evidentiary hearing to allow Vogel to appear before the court. However, the court sees no merit in conducting an additional hearing because counsel conceded that his client would merely reiterate the facts and arguments already contained in the opposition brief currently before the court. Now, the basis of our request was in Molsky v. Evergreen, the last time something like this happened, opposing counsel or the ADA counsel, Tom Frankovich, wasn't given an opportunity to conduct an evidentiary hearing. And I told Judge Gutierrez, and that's in the transcript too, that if he's going to go down this route, the Molsky v. Evergreen sanction route, he needed an evidentiary hearing. So that, I don't know. And he declined it. Thank you, counsel. Thank you.
judges: Reinhardt, Paez, M. Smith